IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

STEVEN E. TRAMMELL                                                     PLAINTIFF

        v.          Civil No. 5:16-cv-05062 PKH-MEF

JONATHAN CORNELISON, Deputy,
Madison County Sheriff's Department                               DEFENDANT

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This is a civil rights action filed by the Plaintiff pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis.*

Plaintiff is incarcerated in the Arkansas Department of Correction. The events at issue in this case occurred in Madison County, Arkansas. Plaintiff maintains his civil rights were violated when, following a traffic stop and his arrest, the Defendant used the cell phone Plaintiff had with him to attempt to set up drug sales.

Defendant filed a motion for summary judgment (Doc. 39). A hearing was held on October 13, 2016, to allow Plaintiff to testify in response to the motion. Plaintiff appeared by video. At the conclusion of the hearing, the case was taken under advisement pending the preparation of this report and recommendation.

Plaintiff indicated he wished to submit exhibits to the Court. He has done so (Doc. 43). Defendant objects to exhibits 2 and 4 (Doc. 44). Exhibit two appears to be screen shots taken from a cell phone. However, the photographs are not authenticated in anyway. The Court will not consider this exhibit. Exhibit four purports to be an unsworn statement from Gwen

-1-

Roberson. The statement will not be admitted as it is not sworn to under penalty of perjury. Exhibits one and three are admitted although they appear to be duplicates of exhibits already introduced into evidence by Defendant.

## I. Background

On February 17, 2015,[1] Defendant witnessed a hand to hand transaction between an individual, later identified as the Plaintiff, and an individual, later identified as Dianna Manning, in a Wal-Mart parking lot. *Deft's Ex.* A-1 at 34-35.[2] Defendant was in an unmarked patrol car. *Id.*

As Plaintiff was pulling out of the parking lot, Defendant recognized him and knew he was driving on a suspended driver's license, had warrants for his arrest, and did not have his seat belt on. *Deft's Ex.* A-1 at 35. Defendant conducted a traffic stop. *Id.*

Plaintiff was arrested and placed in the patrol car. *Deft's Ex.* A-1 at 35. He was placed in custody on warrants from the City of Springdale and Washington County, possession of marijuana, driving on a suspended drivers license, and not wearing a seat belt. *Id.* at 1-6. Plaintiff stated, without being asked, that he would not consent to a search of his vehicle. *Id.* Defendant retrieved his k-9 unit. *Id; see also Deft's Ex.* 2 at 6. The k-9 gave a positive identification on the driver's side door. *Id.*

Defendant located "between the driver's seat and the back rest" a container with 11 OxyContin pills, a wrapper with two OxyContin pills, a hand rolled marijuana cigarette, and a baggie containing methamphetamine. *Deft's Ex.* A-1 at 35. Plaintiff also had $612. *Id.*

---

[1] In his deposition, Plaintiff states he was arrested on February 16, *Defendant's Exhibit* (hereinafter *Deft's Ex.*) B at 22. However, the booking records show the arrest date as February 17, *Deft's Ex* A-1 at 1.

[2] Page numbers are to the jail file number located in the bottom center of the pages.

A confiscation report was filled out for $612 in cash being held by the Madison County Sheriff's Office. *Id.* at 30, 46. The evidence seized from Plaintiff's vehicle was sent to the State Crime Laboratory for analysis. *Id.* at 36, 39. The evidence was confirmed to be methamphetamine, oxycodone, and marijuana. *Id.* at 50. Plaintiff did not oppose the forfeiture of the money, and a consent judgment was entered on August 18, 2015. *Id.* at 48-49.

On February 18, 2015, Plaintiff was charged with possession of methamphetamine or cocaine, three counts of possession of Schedule I or II controlled substances, possession with intent to deliver, use of a communication device to facilitate drug activity, and as a habitual offender. *Deft's Ex.* A-1 at 33. Plaintiff was released to the Washington County Detention Center and went back and forth between various facilities a number of times. *Id.* at 1-19.

Plaintiff had a cell phone with him when he was arrested. *Deft's Ex.* A-1 at 35. On February 18, 2015, Judge Joanna Taylor issued a search warrant on the cell phone for "information concerning the trafficking of narcotics from the digital data from the phone including contacts, incoming or outgoing phone calls, incoming or outgoing text messages, incoming or outgoing SMS, incoming or outgoing e-mails, stored media, pictures, videos, and audio." *Id.* at 43. The warrant was to be served between 6:00 a.m. and 8:00 p.m., not to exceed three days, and the property was to be returned to the judge, no later than five days after execution of the warrant. *Id.* The warrant was returned on February 24, 2015. *Id.* at 47.

On February 18, 2015, Defendant located several text messages that mentioned selling drugs to people. *Deft's Ex.* A-1 at 35. One of the messages was sent to Plaintiff right before he met Manning at Wal-Mart. *Id.* at 36.

On February 18, 2015, Defendant submitted a preliminary report form to the Office of the Prosecuting Attorney regarding the facts to establish probable cause that a crime was committed by the Plaintiff. *Deft's Ex.* A-1 at 44. A digital examination of Plaintiff's phone was completed by Russell Alberts on February 21, 2015,[3] and its contents reported. *Deft's Ex.* A-1 at 24-29.

Plaintiff's phone contained text messages from Beverly Ball. *Deft's Ex.* A-3 at 10. On February 19, 2015, Ball sent Plaintiff a text message asking for methamphetamine or "white" as she referred to it. *Id.*; *see also Deft's Ex.* B at 37.[4] She wanted to meet in the Butterball parking lot. *Deft's Ex.* A-3 at 10. Someone texted her back. *Deft's Ex.* B at 37. Defendant located Ball on Highway 23 North and confirmed with dispatch that she was driving on a suspended drivers license. *Id.* Defendant conducted a traffic stop and charged Ball with driving on a suspended license and no proof of insurance. *Id.*

Ball waived her constitutional rights and admitted she sent text messages to Plaintiff and was driving to meet Plaintiff at the Butterball parking lot to buy $50 worth of methamphetamine. *Deft's Ex.* A-3 at 10-13, 16-18. Her cell phone and $105 were seized. *Id.* She gave consent to the search of her cell phone. *Id.*

On February 19, 2015, Manning was located and arrested. *Deft's Ex.* A-1 at 36*; see also Deft's Ex.* A-2 at 2. Drugs and drug paraphernalia were located at Manning's home. *Deft's Ex.* 2

---

[3] The date on the report is July 21, 2012. This is clearly an error as it reports text messages from February 18-19, 2015.

[4] Citations to this exhibit are to the deposition page number in the upper right corner of odd numbered pages and the upper left hand corner of even pages not the cm/ecf page number.

at 9-11. Two other people at the residence, Richard Moore and David Ligon, were also arrested. *Id.* at 3.

Manning was interviewed and admitted to texting Plaintiff and meeting him at Wal-Mart right before he was arrested. *Deft's Ex.* A-2 at 8. Manning's cell phone was seized and a search warrant obtained for it. *Id.* at 24, 26-27. Manning was charged with use of a communication device and possession of drug paraphernalia. *Id.* at 8 & 22. On February 22, 2015, Manning gave a voluntary statement regarding Plaintiff's drug activity. *Id.* at 29.

Plaintiff testified that while he was incarcerated the Defendant used the cell phone to set up drug transactions. *Deft's Ex.* B at 23. Plaintiff concedes a search warrant had been issued for incoming and outgoing texts; however, he testified the Defendant used the phone on February 18 and 19, 2015, to attempt to set up drug transactions so that others could be arrested on drug offenses. *Deft's Ex.* B at 22.

Plaintiff testified that when he got out of prison in 2014, the phone had been given to him as a gift by his finance, Gwen Roberson. Plaintiff testified she had nothing to do with the phone after that. When the phone broke, he obtained a replacement, the bill was put in his name, and he paid the bills.

Plaintiff testified the phone was not password protected because it was not necessary. *See Deft's Ex.* B at 43. Plaintiff stated the phone was in his possession at all times. Plaintiff indicated the phone was currently still in Defendant's possession.

As noted above, a search warrant had been issued for text messages. Plaintiff testified that certain customers continued to text him about drugs. Additionally, Plaintiff states the search warrant was limited to texts from 6:00 a.m. to 8:00 p.m., and the texts he is talking about were

-5-

made after 9:00 p.m.  Plaintiff argues the use of the phone to send text messages exceeded the scope of the search warrant.

Plaintiff testified that two individuals feel like he set them up over the cell phone.  One of the individuals, Ball, texted his phone and Defendant texted her back.  *Deft's Ex.* B at 27.  Plaintiff maintains the Defendant impersonated him by using the Plaintiff's phone to reply to text messages.  *Id.* at 48.  Ball "put around" that Plaintiff was a snitch.  *Id.* at 34 & 38-40.

Plaintiff testified he took a plea agreement on the charges against him because it was in his best interests.  *Deft's Ex*. B at 25.  At the time he took the plea, he believed Manning was going to testify against him.  *Id.*  He conceded, however, he was not being charged with anything that occurred after his arrest, but said they would back up her testimony with the text messages setting up the buy.  *Id.* at 26 &36.  Because of his incarceration, Plaintiff testified that he was unable to attend his father's funeral.  *Id.* at 21.  Further, he testified his finance was barely getting by financially.  *Id.* at 42.

With respect to his official capacity claim, Plaintiff testified that he was not able to allege or identify any pattern of unconstitutional conduct.  With respect to Defendant, Plaintiff testified he was "gung ho" to get the Plaintiff off the streets and had a vendetta against him.

## II.  Applicable Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a

reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.*, 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a Court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. Discussion

Defendant moves for summary judgment on the following grounds: (1) Plaintiff was not the owner of the phone and, therefore, had no standing: (2) the text messages were obtained through a valid search warrant; (3) Plaintiff suffered no compensable injury; and, (4) there is no basis for official capacity liability.

#### A. Standing

The "Fourth Amendment proscribes all unreasonable searches and seizures." *Horton v. California*, 496 U.S. 133 n.4 (1990) (citations omitted). Fourth Amendment rights are personal rights that may not be asserted vicariously. *See Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978). "An individual asserting Fourth Amendment rights 'must demonstrate that he personally has an

expectation of privacy in the place searched, and that his expectation is reasonable.'" *United States v. Barragan*, 379 F.3d 524, 529 (8th Cir. 2004) (*quoting Minnesota v. Carter*, 525 U.S. 83, 88 (1998)).

With regard to the content of cell phones, the Eighth Circuit has looked to whether the person seeking to challenge the search owned, possessed, or used the cell phone. *United States v. Turner*, 781 F.3d 374, 382 (8th Cir. 2015). Plaintiff was clearly in possession of the phone and had used the phone. Additionally, his testimony that he paid the phone bills was uncontroverted. While it was not password protected, there is no evidence that Plaintiff let the phone out of his possession. In fact, his suspected use of the phone to set up drug sales was precisely why the Defendant sought a warrant to search the phone.

### B. The Search

Here, the Defendant correctly obtained a warrant to search the digital data stored on the cell phone. *Riley v. California*, 134 S. Ct. 2473 (2014) (a search incident to arrest does not allow the search of digital data on a cell phone). Plaintiff does not contest the legitimacy of the search warrant itself or the review of its contents up to the time of his arrest. *United States v. Gabrio*, 295 F.3d 880, 882 (8th Cir. 2002) ("The Fourth Amendment requires a showing of probable cause to support a search warrant."). Rather, he contends the use of the phone to set up drug buys exceeded the scope of the warrant.

It has been recognized that cell phones may contain records of the use and purchase of controlled substances. *See e.g., United States v. Gamboa*, 439 F.3d 796, 807 (8th Cir. 2006). Here, the warrant authorized the seizure of: "Information concerning the trafficking of narcotics from the digital data from the phone, contacts (stores phone numbers), phone calls (incoming &

-8-

outgoing), text messages (incoming & outgoing) SMS (incoming and outgoing), emails (incoming & outgoing), stored media, pictures and video's) & audio from a digital recorder."

The warrant would clearly cover any existing text messages and would extend to incoming messages subsequent to the Plaintiff's arrest that occurred prior to the return of the warrant on February 24, 2015.

The warrant would not cover, however, a police officer's use of the phone to send text messages to set up drug buys. The use of the phone exceeded the scope of the warrant.

### C. Injury

Defendant next argues that even if he used the cell phone, and the use exceeded the scope of the warrant, Plaintiff was not injured in anyway as his charges stemmed from the drug sale to Manning which occurred prior to the seizure and subsequent search of the cell phone. Moreover, Plaintiff pleaded guilty. Thus, no evidence obtained during the search of the phone was used against him.

Plaintiff seeks both compensatory and punitive damages. He additionally asks that Defendant be terminated. The absence of an actual injury does not entitle Defendant to judgment in his favor; but rather, it may limit the Plaintiff to recovery of nominal damages only. *See Carey v. Piphus*, 435 U.S. 247, 255 (1978); *see also Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (citations omitted) (damages may not be awarded for the abstract or subjective value of the constitutional right at issue). *See Stachura*, 477 U.S. at 308; *Carey*, 435 U.S. at 248.

Additionally, the Prison Litigation Reform Act of 1996 (PLRA) provides as follows: "No Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional

facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." In *Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004), a case in which plaintiff argued he had been retaliated against for filing complaints and grievances, the Court of Appeals for the Eighth Circuit ruled that the physical injury requirement of the PLRA "limit[ed] recovery for mental or emotional injury in all federal actions brought by prisoners." The court also noted that Royal could not recover some indescribable and indefinite damage allegedly arising from a violation of his constitutional rights. *Id.* at 724. Section 1997e(e), however, did not bar the recovery of other types of relief such as nominal damages, punitive damages, and injunctive and declaratory relief. *Id.*

### D. Official Capacity Liability

Defendant is entitled to dismissal of the official capacity claim. Plaintiff does not allege that an unconstitutional municipal custom or policy caused the constitutional violation at issue in this case. Instead, he points only to the use of his cell phone. "Proof of a single incident of unconstitutional activity is not sufficient to impose liability . . . unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Mann v. Yarnell*, 497 F.3d 822, 827-28 (8th Cir. 2007) (*quoting City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985)). No such claim is made in this case.

Further, even if Defendant violated county policy, this is insufficient to support county liability. "A claim against a county is sustainable only where a constitutional violation has been committed pursuant to an official custom, policy, or practice." *Johnson v. Blaukat*, 453 F.3d 1108, 1114 (8th Cir. 2006) (citation omitted).

-10-

## IV.  Conclusion

For the reasons stated, I recommend that the Defendant's motion for summary judgment (Doc. 39) be **GRANTED IN PART AND DENIED IN PART.** Specifically, the motion should be granted with respect to the official capacity claim. In all other respects, the motion should be denied.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 2nd day of March, 2017.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

AO72A (Rev. 8/82)